**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**C. H. SPRAGUE & SON CO., Respondent,**

and

**Chauffeurs, Teamsters and Helpers Local Union 633, Intervenor.**

**No. 7465.**

United States Court of Appeals, First Circuit.

June 30, 1970.

Eugene B. Granof, Washington, D. C., Attorney, with whom Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and James P. Hendricks, Washington, D. C., Attorney, were on the brief, for petitioner.

Bernard B. Gould, Boston, Mass., for respondent.

Robert M. Baptiste, Washington, D. C., with whom Hugh J. Beins, Washington, D. C. was on brief, for intervenor Chauffeurs, Teamsters and Helpers Local Union No. 633.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

C. H. Sprague & Son Company is in the business of selling and distributing petroleum. It normally employs some twenty-five year-round drivers at its Portsmouth, New Hampshire, plant, but hires extra drivers during the winter months to cope with the increased demand for its product. The events at issue here began in 1967 with an attempt by the Teamsters' union[1] to win certification as the collective bargaining agent for the company's truck drivers. A representation hearing was held, at which the dominant issues were whether the bargaining unit should include the winter drivers as well as the year-round drivers, and if the winter drivers were in, whether the election should be postponed until the peak season.

The Regional Director found that the winter drivers should be considered as "temporarily laid off" employees and should therefore be included in the unit. He further found that an immediate election was necessary in order to protect the interests of the year-round drivers.

Following the election in which the union was victorious, the company refused to recognize its legality on the ground that the unit was inappropriate. The Board issued a complaint charging refusal to bargain and a hearing was held. The trial examiner refused to reconsider the question of the appropriateness of the unit, on the ground that the issue was concluded by the prior proceedings. The Board found that the company had violated sections 8(a) (1) of the Act by coercive conduct on the part of one of its supervisors, 8(a) (5) and (1) by refusing to bargain with the certified union and making unilateral changes in the terms and conditions of employment, and 8(a) (3) and (1) in that the company's actions resulted in discrimination against certain employees.

Before us is the Board's petition for enforcement of its order which directs, *inter alia*, that the company cease its unlawful conduct, offer jobs to those winter drivers who were denied employment due to its unilateral changes and make them whole for any loss suffered as the consequence of the discrimination.

The central question is, of course, the appropriateness of the unit. In Banco Credito y Ahorro Ponceno v. NLRB, 390 F.2d 110 (1st Cir.), cert. denied, 393 U.S. 832, 89 S.Ct. 101, 21 L.Ed.2d 102 (1968), we emphasized the broad discretion vested in the Board, our circumscribed scope of review and the Act's policy of assuring freedom to employees to organize, that contribute to an unwillingness on our part to overrule the Board in making unit determinations. The Board's ruling will not be disturbed unless it is shown that the

---

1. Chauffeurs, Teamsters, and Helpers, Local Union No. 633 of New Hampshire, a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

unit is "clearly not appropriate." This is not such a case.

The record shows that all drivers did the same work, received the same hourly rate based on their years of service, and were eligible for many of the same fringe benefits. Thus all received sick, holiday and vacation pay, and after three years, winter drivers were eligible for BlueCross-BlueShield insurance. A high percentage of the winter drivers had been with the company for at least three years, and almost eighty per cent of those employed during the 1966–67 winter season had worked the previous winter. Although new employees had to fill out employment applications, returning winter drivers did not. Their names were kept posted in the order of hiring throughout the year, and when the winter season approached, the company took the initiative in contacting them. We think the winter drivers meet the Board's criteria with respect to seasonal employees in that they share a community of interest with the other employees and possess a substantial interest in employment conditions that would warrant inclusion in the same bargaining unit. See NLRB v. Atkinson Dredging Co., 329 F.2d 158 (4th Cir. 1964); Aspen Skiing Corp., 143 N.L.R.B. 707, 711 (1963); California Vegetable Concentrates, Inc., 137 N.L.R.B. 1779, 1781 (1962); Carol Management Corp., 133 N.L.R.B. 1126, 1128–1129 (1961).

According to the company, the undisputed evidence shows that when the seasonal employees left each spring they voluntarily terminated their employment, and thus could not be deemed to be "laid off." Cf. Aspen, supra. But in our opinion these employees could nonetheless participate in the unit where all the circumstances showed that their off-season status was the functional equivalent of a layoff.

In the months preceding the election, one Thurston, the company's assistant superintendent, approached various drivers and by inducements or threats of unemployment and loss of benefits, encouraged them to vote against the union. The Board found that these constituted violations of section 8(a)(1) of the Act. Thurston did not testify at the hearing. The company introduced in evidence a letter from Thurston's doctor stating that he was suffering from severe arthritis and emotional disturbance, that he had been hospitalized from November 18, 1967 to January 9, 1968, and that he was in no condition to undergo emotional stress. On the final day of the hearing, the company asked the trial examiner for permission to take his deposition. This request was denied on the ground that the company failed to exercise due diligence by not seeking permission to depose the witness "before, or during, the hearing."

■ The grant or denial of a request to take depositions is within the discretion of the trial examiner and reversal is limited to those instances in which the reviewing court deems the exercise of that discretion abusive and prejudice is shown. Electromec Design and Development Company v. NLRB, 409 F.2d 631, 635 (9th Cir. 1969). We think the request was properly denied.

■■ The complaint specifically alleged that Thurston had engaged in conduct violative of the Act. Although the company must have realized the importance of his testimony, apparently no timely steps were taken either to prepare him or to find out from his doctor when his condition would permit the deposition to be taken. Consequently, the company made only an open-ended request. We do not agree with the trial examiner that the deposition had to be taken prior to or during the hearing. 29 C.F.R. § 102.30(a) (1968). However, this does not excuse counsel from taking such measures as will expedite the proceedings. Given the company's lack of due diligence and the desirability of a prompt and orderly determination of the issue, we think the trial examiner acted within his discretion in denying the com-

pany's request to take Thurston's deposition.[2]

■ Following the union's certification, the company made certain unilateral changes in employment conditions that the Board found to be violations of section 8(a) (5) and (1). Thus, contrary to previous practice, in the 1967–68 winter season instead of hiring former drivers to handle the increased seasonal business, the company augmented its force with independent contractors.[3] Former drivers who sought employment were told that seniority had been abolished and that they would have to fill out an application. The former terminal manager testified that even though company policy had always been to require new applications, this was not enforced. The Board specifically identified seven former drivers who came in on their own initiative to apply for winter work, and found that five of them were not rehired due to pro-union sympathies.[4] The Board properly found that the subcontracting was "the kind of basic change in operations concerning which an employer * * * is obligated to bargain with his employees' representative." *See* Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964); Cooper Thermometer Co. v. NLRB, 376 F.2d 684, 688 (2d Cir. 1967); NLRB v. Johnson, 368 F.2d 549, 551 (9th Cir. 1966). Furthermore, the elimination of seniority, change in recall policy and mandatory applications were changes in the employment relationship of sufficient magnitude to preclude their adoption on a unilateral basis. *See* NLRB v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); Oneita Knitting Mills, Inc. v. NLRB, 375 F.2d 385, 389 (4th Cir. 1967); NLRB v. Frontier Homes Corp., 371 F.2d 974, 979–980 (8th Cir. 1967).

The trial examiner also found that "[e]mployees were * * * told by [terminal manager] Varney, contrary to the previously established practice, that they would be required to sign notices at the close of each season acknowledging that they had *completely* severed their employment relationship with Respondent, the effect of which would be to unequivocally foreclose any right to seniority if they should be employed in following seasons."

Similarly, this was found to be a substantial and material departure from past practice and impermissible as a unilateral measure. Although the Board affirmed, it now concedes that the finding is not borne out by the record. Nevertheless, it tries to find support for the ruling in testimony to the effect that the drivers were asked to sign termination slips at the end of the season. The Board acknowledges, however, that the Regional Acting Director has pre-

---

2. The company also argues that the trial examiner relied on events occurring outside the six months time limitation of 29 U.S.C. § 160(b) to establish violations. *See* Local Lodge No. 1424, International Association of Machinists v. NLRB, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960). The evidence said to be time barred is apparently Thurston's remarks to various employees. The examiner stated that he relied on this evidence only as background material indicating the company's union animus. He carefully limited his conclusions to the incidents within the six month period preceding the filing of the complaint. These were ample to support a finding of unfair labor practice. *See* NLRB v. Strong, 386 F.2d 929, 931 (9th Cir. 1967), cert. denied, 390 U.S. 920, 88 S.Ct. 853, 19 L.Ed.2d 980 (1968), rev'd, 393 U.S. 357, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969); NLRB v. Ritchie Mfg. Co., 354 F.2d 90, 99–100 (8th Cir. 1965); NLRB v. Murray Ohio Mfg. Co., 326 F.2d 509, 511 (6th Cir. 1964).

3. For the 1967–68 winter season only four former winter drivers were hired. The number of independent contractors increased from the 6–8 hired in previous years to 26.

4. As to the other two, the examiner found the evidence insufficient to conclude that they were dismissed because of their union views. But, he added, neither was there any other adequate explanation of why they were not rehired.

viously found this testimony insufficient to establish a basic alteration in terms and conditions of employment. Despite this, the Board urges us to read the same testimony in light of all the other evidence of unilateral changes and infer that it was part of a concerted effort by the company to unlawfully alter the employment status of the winter drivers. This we decline to do. The Board made an unequivocal finding which it now admits was wrong. It cannot be cured by reading between the lines as the Board would now have us do. On the other hand, we do not think it is a matter of particular importance. What is important is that the company used the papers the employees signed to implement their new, improper hiring policy. We do not think the company is prejudiced by the form of the order in this respect.

On the basis of its failure to rehire five of the winter drivers, the Board held that the company violated section 8(a) (3) and (1). This finding is supported by substantial evidence to the effect that the company must have known that the five voted in favor of the union, and that this knowledge was the basis for their not being rehired.[5] The Board directed the company to offer to reinstate the employees who were subject to discrimination for the 1969–70 winter season. Since the passage of time has effectively mooted the effect of the order, we hold, pursuant to section 10(e), that an offer of reinstatement shall be made for the winter season immediately following final adjudication of the case.

■ During the unfair labor practice proceedings, a subpoena was issued at the request of the general counsel calling for the production of a number of company documents and records. The company filed a motion to revoke, which was denied. When it failed to produce the material, the trial examiner found that it thereby forfeited its right to cross examine witnesses with references to any matter which could have been produced by complying with the subpoena. *See also* NLRB v. American Art Industries, Inc., 415 F.2d 1223, 1229–1230 (5th Cir. 1969) ; Bannon Mills, Inc., 146 N.L.R.B. 611, 613 n.4, 633–34 (1964).

Section 11(2) of the Act and the pertinent regulations provide for the enforcement of subpoenas in the United States District Court. The company argues that the statutory scheme sets out the exclusive machinery for enforcement, and suggests that limitations on its right to cross examine witnesses were without legal justification.

If the company were taking the position that all the information sought by the subpoena was irrelevant, we might agree with its position. "[T]he right of cross-examination inheres in every adversary proceeding." Derewecki v. Pennsylvania Ry., 353 F.2d 436, 442 (3d Cir. 1965). Congress has made elaborate provision for obtaining and enforcing subpoenas, NLRB v. Duval Jewelry Co., 357 U.S. 1, 78 S.Ct. 1024, 2 L.Ed.2d 1097 (1958); Lewis v. NLRB, 357 U.S. 10, 78 S.Ct. 1029, 2 L.Ed.2d 1103 (1958). It was obviously its intention that this machinery be utilized. But the company admitted before the trial examiner that certain of the requested information was relevant. It offered no justification for its failure to comply with that part of the subpoena to which it had no objection. Under these circumstances the company's intransigence gave the trial examiner ample justification for his ruling made in the interest of maintaining the integrity of the hearing process. NLRB v. American Art Industries, Inc., *supra,* 415 F.2d at 1230.

All other objections have been considered and rejected.

5. At least twelve winter drivers voted in the election, these five included. The ballots were challenged and were not opened and counted until later. All twelve were pro union votes. The reasons given by the company to explain why the men were not rehired were inconsistent and unconvincing.

*The Board's order will be enforced with the modification that the company be directed to offer employment to the employees discriminated against for the winter season next following final disposition of this case.*