**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BEST PRODUCTS COMPANY, INC., Respondent.**

No. 78–3238.

United States Court of Appeals, Ninth Circuit.

May 1, 1980.

As Amended June 26, 1980.

---

Barbara Kraft, Atty., Washington, D. C., argued for N.L.R.B.; Janet C. McCaa, Washington, D. C., on the brief.

Sidney S. Wolchok, New York City, for respondent.

Before ANDERSON and SKOPIL, Circuit Judges and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge:

This case is before the Court on application by the NLRB for enforcement of its Order of June 19, 1978 citing Best Products Company, Inc. (Best) for unfair labor practices in violation of Sections 8(a)(4), 8(a)(3) and 8(a)(1) of the National Labor Relations Act. The Board's finding arises out of a two-month suspension of Best employee Shirley P. Smith in January 1977. The Administrative Law Judge (A.L.J.) initially found that this suspension was in response to Smith's excessive absenteeism, and dismissed the charges against Best. The Board reversed that finding, however, and held that the suspension was prompted by Smith's Union activity, and was thus an unfair labor practice. The Board's Order requires Best to cease and desist from unfair labor practices, and to provide Smith with back pay for the suspension period. We conclude that enforcement of that order should be denied.

Best Products Company, a Virginia corporation, is a nationwide showroom merchandiser with two locations in the Sacramento area. In the summer of 1975 authorization cards for Local 588, Retail Clerks International Association (the Union) were distributed to employees of both Sacramento, Cali-

---

* Senior District Judge William J. Campbell of the Northern District of Illinois, sitting by designation.

fornia showrooms. Subsequently, the Union filed a petition for elections in September 1975. Employee Smith participated in the solicitation of cards and in the election campaign on behalf of the Union. Throughout the fall of 1975, employee Smith was frequently absent from work. On January 5, 1976, she received a warning for excessive absenteeism. On November 21, 1975, elections were held at both Sacramento showrooms. The Union lost both elections. On December 1 of that year, the Union filed timely post-election objections. In January 1976, the Regional Director issued a report recommending that certain objections be overruled and requiring that a hearing be held on others. That report was adopted by the Board and in March of 1976 hearings on these objections were held. Smith was present at those hearings. On June 10, 1976, the Hearing Officer issued a report sustaining certain objections, recommending that the first election be set aside, and ordering subsequent elections in each showroom. In October of 1976, the Board adopted the Hearing Officer's report, however, the Union subsequently withdrew its request for a second election and the election was never held.

During the fall of 1976, Shirley Smith was frequently absent from work. The A.L.J. found that during that period she missed 13 full days and 4 partial days of work. These absences were allegedly due to illness, and there is evidence in the record showing that Smith's supervisors believed that some of these absences were, in fact, a result of illness. Best notes, however, that certain absences were immediately prior to and after work holidays.

Best introduced evidence at the trial to the effect that the months of October, November and December are the industry's busiest time of year due to the Holiday Season. Best's showroom manager testified that approximately fifty per cent of Best's annual business occurs during those three months. There was also testimony indicating that Smith's absences were greater than any other employee at the Sacramento facility in which she worked.

On January 10, 1977, Showroom Manager Alphin called employee Smith into his office and read her the following statement:

SUBJECT: EXCESSIVE ABSENTEEISM

COMMENTS: For the past 3 months your absenteeism has been exceptionally high, again this year as it was the previous year, during the same time period. This imposes a severe burden upon your department and the showroom in general. We hereby are directing you to take a two month leave of absence to hopefully restore you to good health.

Leave to commence 1–10–77
Leave to terminate 3–10–77

I acknowledge receipt of the above compliment/reprimand.

16 days in 3 months

/s/ Shirley P. Smith
Employee Signature

Shortly thereafter, a statement was read to the employees of the Best showroom stating that Smith had taken a leave of absence for health reasons. Smith subsequently provided a letter to her employer from her doctor stating that she had recovered from any illness and was capable of working.

At trial before the A.L.J., Best supervisors testified that the reason for her suspension was to regain her health. The General Counsel for the Board argued that the suspension was a result of Union activity. The A.L.J. found that the suspension was a reprimand for Smith's excessive absenteeism and that it was not motivated by Smith's Union activity. The A.L.J. noted:

"The 2-month suspension of Smith may appear to be harsh, but it was not disparate treatment, and it is well established that the Board cannot substitute its judgment for that of the employer as to what constitutes reasonable grounds for discipline or discharge . . ."

A three-member panel of the Board reversed the finding of the A.L.J. The Board found that the characterization of the suspension as disciplinary was not supported by the evidence. The Board also found that

the asserted reason for suspension, continuing illness, was pretextual. Having found that the motive for the suspension was not in fact the one asserted by the employer, the Board inferred that the motive for suspension was an unlawful one. The Board relied on *Shattuck Denn Mining Corporation v. NLRB*, 362 F.2d 466, 470 (9th Cir. 1966), which holds that an unlawful motive may be inferred when an asserted motive for discharge is false, and the surrounding facts of the case tend to reinforce the inference of an unlawful motive.

In addition to the inference of an unlawful motive, the Board also based its finding of an unfair labor practice on the company's general anti-union animus. This animus was again inferred, this time from the company's conduct in the election the prior year. The Board based the inference of anti-union animus on the Hearing Officer's findings that the respondent Best had asked employees to remove Union buttons while in the showroom area, questioned employees regarding Union activity, and discriminatorily enforced a no-solicitation rule. These findings were, of course, made in the prior hearing relating to the validity of an election, which did not relate to the present unfair labor practice proceeding. The Board concluded:

> "Consequently, having found evidence of Respondent's union animus, and that Respondent's asserted reason for suspending Smith is pretextual, we conclude that the actual motive for the suspension was her Union activity and her participation in the Board proceeding. Accordingly, we find that Respondent violated Section 8(a)(4), (3) and (1) of the Act by suspending Smith."

The Board ordered Best to provide Smith with back pay, less her net earnings during the period of suspension, and to cease and desist from infringing in any manner employee rights guaranteed under Section 7 of the Act.

■ The Board's findings of fact will be sustained if supported by substantial evidence taken from the record as a whole. 29 U.S.C. § 160(e). *Universal Camera Corporation v. N. L. R. B.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). Here, the crucial factual determination by the Board is that Shirley Smith's suspension was in response to protected Union activity. A finding that disciplinary action constitutes an unfair labor practice must be bottomed on a determination that the employer's motive was unlawful. *NLRB v. Miller Redwood Company*, 407 F.2d 1366 (9th Cir. 1969). Where a discharge is motivated by both improper and proper purposes, the test is whether an improper purpose is the "moving" or but-for cause. *Western Exterminator Co. v. N. L. R. B.*, 565 F.2d 1114, 1118 (9th Cir. 1977); *Stephenson v. N. L. R. B.*, 614 F.2d 1210 (9th Cir. 1980). We, therefore, address the question of whether the Board's finding of an unlawful motive is supported by substantial evidence. We conclude that it is not.

■ The Administrative Law Judge who heard testimony in this case, received evidence and made findings as to credibility concluded that the suspension was motivated by Smith's absenteeism rather than Union activity. The Court in *Universal Camera, supra*, 340 U.S. at 496, 71 S.Ct. at 469 noted:

> "Evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion."

Accord, *Butler-Johnson Corp. v. N. L. R. B.*, 608 F.2d 1303, 1305 (9th Cir. 1979).

The Board's finding of an unlawful motive is based solely on two inferences. First, the Board relies heavily on the fact that the employer sought to explain the suspension in terms of Smith's health. Second, the Board relies on its findings that the company was generally anti-union, as evidenced by its conduct in the election campaign the prior year. With regard to

the first inference, the Board may infer an unlawful motive when the employer's asserted motive is false. *See Shattuck Denn Mining Corp. v. NLRB; supra,* 362 F.2d at 470. Nevertheless, the Board's ultimate finding must still meet the test of substantial evidence. *See NLRB v. Miller Redwood,* 407 F.2d 1366 (9th Cir. 1969). At the hearing before the A.L.J. respondent introduced evidence showing that Smith's rate of absenteeism was the highest for any employee during the period in question. Evidence was also introduced which tended to show that discipline was common in cases such as Smith's. The previous year, another employee was terminated after absences of fifteen or sixteen days. Other employees were routinely given warnings, as was Smith, when their absenteeism reached ten days. Also, the form signed by Smith stated that she acknowledged the *above reprimand.* With regard to the Board's inference of a general anti-union animus, some corporations espouse a general anti-union philosophy. A general anti-union spirit, absent a history of concerted unlawful conduct, is not evidence of unfair practices. While Best had interfered with the desired "laboratory conditions" in a prior recognition election, the infractions were relatively minor, and did not rise to the level of unfair labor practices. The evidence in support of the inference of anti-union sentiment is not substantial.

■ An employer may discharge or suspend an employee for any reason other than engaging in protected activity. *NLRB v. Tayko Industries, Inc.,* 543 F.2d 1120, 1124 (9th Cir. 1976). The Board's finding that Best's motive was an unlawful one is not supported by any direct evidence. The Board's finding is supported only by inferences which do not rise to the level of "substantial evidence." While Smith did engage in Union activity, there is no evidence tying her suspension to that activity. The finding of an unfair labor practice cannot be supported by a mere inference or suspicion. Accordingly, ENFORCEMENT is DENIED.