**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL MEDICATION SYSTEMS, LTD., Respondent.**

No. 79–7584.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 15, 1980.

Decided April 2, 1981.

As Corrected April 8, 1981.

Susan Mandle, Atty., NLRB, Washington, D. C., for petitioner.

Lee T. Paterson, Palos Verdes Estates, Cal., for respondent.

Before WRIGHT, KENNEDY and ALARCON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

The Board seeks enforcement of its order directing the respondent to cease and desist from unfair labor practices and to reinstate two employees with back pay. 244 NLRB No. 136 (1979).

In 1978 Lavendera and Guzman led an effort to secure union representation for the respondent's employees. During that effort, several company supervisors communicated with employees about the consequences of involvement in union activity. Lavendera and Guzman were ultimately discharged.

An administrative law judge and the Board concluded that the respondent interfered with union activity and discharged the two employees in violation of § 8(a)(1) & (3) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1) & (3).

In determining that the dismissals were discriminatory, the Board relied on secondary evidence of the respondent's policy toward absenteeism and layoffs introduced by the general counsel after the respondent refused to produce subpoenaed personnel records. No effort was made to seek enforcement of the subpoena in district court. Instead, the administrative law judge barred the respondent from rebutting the general counsel's evidence on these issues by cross-examining witnesses or presenting other evidence.

We review the sufficiency of the evidence and the propriety of the sanctions imposed by the administrative law judge.

### I.

The Board found that the respondent interfered with, restrained, and coerced employees engaged in union activity, in violation of NLRA § 8(a)(1), 29 U.S.C. § 158(a)(1), by interrogating and threatening them, creating the impression of surveillance, and otherwise creating a coercive atmosphere.

These findings must be upheld if supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(e); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 485–87, 71 S.Ct. 456, 463–464, 95 L.Ed. 456 (1951).

■ Company supervisors Ruiz, Aparicio, Chai, and Hinderer asked numerous questions of employees about union activities and the identity of union leaders and sup-

porters. These were coupled with express or implied threats of reprisal. Viewed separately or as a pattern, they could fairly be interpreted as tending to interfere with protected activity. *See NLRB v. Silver Spur Casino*, 623 F.2d 571, 584–85 (9th Cir. 1980) (NLRA § 8(a)(1) is violated by questions that can fairly be interpreted as threats); *NLRB v. Hotel Conquistador, Inc.*, 398 F.2d 430, 434 (9th Cir. 1968) (statements that create the impression of surveillance are unlawful).

Aparicio, Hinderer, and Contreras made other statements about the probable firing of union supporters which could fairly be interpreted as threats of reprisal. Hinderer and Contreras directly or indirectly threatened that the company would close if the union prevailed. *See NLRB v. Prineville Stud Co.*, 578 F.2d 1292, 1295 (9th Cir. 1978) (threat to close a plant unless union activity ceases is unlawful).

■ The respondent contends that Contreras was not a supervisor and that her actions were not attributable to it. We need not resolve that question.[1] Even if the actions of Contreras may not be imputed to the respondent, there is abundant evidence of interference, restraint, and coercion. We grant enforcement of the Board's order that the respondent cease and desist from interfering with union activity and post an appropriate notice.

### II.

The Board found that the respondent dismissed Lavendera and Guzman in retaliation for their union activities, in violation of NLRA § 8(a)(1) & (3), 29 U.S.C. § 158(a)(1) & (3).

In connection with this question, the Board issued a subpoena duces tecum calling for production of personnel records for

---

1. Contreras was a "lead person," and in another setting, "lead persons" who were deemed "low-level" supervisors were held not to speak for the company in the absence of other anti-union activity. *Hecla Mining Co. v. NLRB*, 564 F.2d 309, 315 (9th Cir. 1977).

But an employer is properly held responsible for anyone acting as its agent when employees could reasonably believe that the agent was speaking for the employer. *NLRB v. Pacific Southwest Airlines*, 550 F.2d 1148, 1150 (9th Cir. 1977).

Contreras acted in the context of other anti-union activity by persons whose supervisory status is undisputed, unlike the "lead persons" in *Hecla Mining Co.* Under these circumstances, employees might reasonably have believed that she was speaking for the respondent.

all employees which would show hiring, firing, and layoff practices and actual treatment of absenteeism.

The respondent complied with the portion of the subpoena calling for the records of Lavendera and Guzman, and other materials, but refused to comply with the portion calling for records of employees not within the bargaining unit. It contended that these were irrelevant. Its petition to revoke the subpoena was denied, but the general counsel did not seek enforcement of the subpoena in district court and the preclusion order followed.

A. *Nature of evidence admitted and excluded*

1. *Discharge of Lavendera*

Lavendera was a leader of the organizing effort. Prior thereto, the company had trained her and taken steps to ensure that she would continue to be available. Before a union meeting at her home on April 6, she received assurances that she would have her anniversary raise and was told that her services were needed.

April 7, the day after the union meeting, was the turning point in Lavendera's relationship with the respondent. Her value to the company apparently evaporated. Her supervisor, Chai, asked another employee about her involvement with the union, implying that he would retaliate. The administrative law judge credited Lavendera's account of her discussion with Chai in which she said he told her, on the morning of April 7, that he would find an "excuse" to discharge her "after lunch." That afternoon, she was discharged. At least one supervisor said that Chai dismissed her for union activity.

Chai maintained that Lavendera was "laid off" because her services were no longer needed. The general counsel introduced evidence that no one else was let go that day and that layoffs at the company normally occurred en masse. The adminis-

trative law judge did not allow the respondent to rebut this evidence.

■ "A discharge for which the employer has a justifiable ground" nevertheless violates the statute "if it is in fact motivated by antiunion sentiment." *L'Eggs Products, Inc. v. NLRB*, 619 F.2d 1337, 1341 (9th Cir. 1980). When motives are mixed, "the improper motive must be shown to have been *the dominant one.*" *Id.* (quoting *Western Exterminator Co. v. NLRB*, 565 F.2d 1114, 1118 (9th Cir. 1977) (emphasis added in *L'Eggs*)).

In *L'Eggs*, an employee was dismissed "very soon after L'Eggs received reports that [she] was interested in unions and would support a union . . . at L'Eggs." *Id.* at 1342. There was "little doubt" that she was "a poor employee, and could have been fired for that reason." *Id.* at 1343. But there was substantial evidence, in view of inquiries by supervisors about her union activities and the timing of her discharge, that the dominant reason was her union activity. *Id.* at 1343–44.

There is no suggestion that Lavendera was not a good employee. Her services were valued by the company until she held a union meeting in her home. Then she became expendable. Even if other layoffs occurred contemporaneously, this one might still fairly be interpreted as retaliation.

Nevertheless, it is possible that similar or contemporaneous layoffs of employees with comparable training and value to the company would have established, under the circumstances, that the business reason given for Lavendera's discharge was not pretextual and that antiunion motivation was not dominant. The secondary evidence, which shows that Lavendera was the only employee laid off on April 7 and that layoffs normally occurred en masse, eliminates this possibility. This evidence is therefore essential to the Board's finding that Lavendera's discharge was improperly motivated.

## 2. Discharge of Guzman

Guzman took two weeks' vacation and one week's leave of absence in July 1978. She knew that one day of her vacation, Independence Day, was a paid holiday and that company policy was to extend vacations one day under such circumstances. She believed that her total time off would be three weeks and one day.

The respondent had reduced her leave of absence by one day, however, and when she did not return to work after three weeks, she was "terminated." No one telephoned her first, and she had previously received only one oral and one written warning for tardiness.

The general counsel's evidence showed that other employees had missed one or more days without notifying the company and had not been discharged, and that company policy permitted two unexcused absences before dismissal. Again, the respondent was not permitted to rebut the evidence because it had refused to produce personnel records that presumably would have resolved the issue.

Refusal to give a day off when an employee was hired with the understanding that she could take occasional days off and had been allowed to do so before her union involvement was held to be an unfair labor practice in *NLRB v. Sacramento Clinical Laboratory, Inc.*, 623 F.2d 110, 113 (9th Cir. 1980).

Nevertheless, the respondent might be able to rebut this evidence of improper motive by establishing that Guzman did not receive disparate treatment. *See NLRB v. Best Products Co., Inc.*, 618 F.2d 70, 72, 74 (9th Cir. 1980). In *Best Products*, the employee was "frequently absent from work." *Id.* at 72. The court upheld the administrative law judge's finding that, although the company's action in suspending the employee for two months may have been harsh, it did not represent disparate treatment and

was proper. *Id.* at 72, 74. Here, the secondary evidence established that Guzman received disparate treatment.

## B. Effect of preclusion order

Because the secondary evidence is essential to the Board's findings that Lavendera and Guzman were improperly discharged and rebuttal evidence might have changed the result, we must determine the propriety of the preclusion order.

When the respondent refused to comply with the subpoena, the general counsel could have sought judicial enforcement. Section 161(2), 29 U.S.C., confers jurisdiction on the district courts to enforce NLRB subpoenas through contempt penalties.

The district court will enforce an agency subpoena "if the investigation is legitimate, the subpoena is not needlessly broad, and the records sought are relevant to the inquiry." K. Davis, *Administrative Law* § 3.08 at 67 (3d ed. 1972). *See United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614 (1946).[2]

The Board contends that the subpoenaed records were "clearly relevant to major issues in the case." There is no apparent reason for confining the inquiry to members of the bargaining unit, and the respondent offers none. Under these circumstances, it seems likely that a district court would have enforced the subpoena.

The respondent maintains, however, that 29 U.S.C. § 161(2) grants exclusive enforcement power to the district courts and that the agency lacks statutory or constitutional authority to impose sanctions for noncompliance.

Although the issue apparently has not arisen in this circuit, similar sanctions were imposed in *NLRB v. C. H. Sprague & Son Co.*, 428 F.2d 938 (1st Cir. 1970). The em-

---

**2.** The district court "may undertake only an extremely limited inquiry" in deciding whether to enforce the subpoenas. *NLRB v. Frederick Cowan & Co., Inc.*, 522 F.2d 26, 28 (2d Cir. 1975). "[T]he agency need not even show probable cause to believe that the law has been violated," *id.* (citations omitted), only some reasonable basis for believing that the information will prove relevant. *Id.*

ployer refused to comply with any part of a subpoena though it contended that only one part was irrelevant. *Id.* at 942.

The court held that the employer lost the right to rebut evidence on matters covered by the subpoena because it would be unfair to allow it to do so when it had documents that would be decisive (some were of undisputed relevance) but refused to produce them. *Id.* The *Sprague* court stated, however, that "if the company were taking the position that all the information sought by the subpoena was irrelevant, we might agree with its position." *Id.*[3]

The respondent takes the position that all information sought but not produced (or offered) is irrelevant. The Board replies that the respondent's assertion of irrelevance is frivolous. Were the issue to arise in a discovery proceeding, Rule of Civil Procedure 37(b)(2) would authorize the court to impose sanctions for bad faith refusal to comply with discovery orders. The sanctions could include dismissing a party's claim or precluding introduction of evidence on relevant issues as well as imposing penalties for contempt and awarding expenses to opposing parties. *Id.*

The Rules of Civil Procedure are applicable to NLRB proceedings "so far as practi-cable." 29 U.S.C. § 160(b).[4] But, as one commentator notes, "although courts can only impose rule 37(b)(2) sanctions after a ruling on all objections, and then only for disobedience of a judicial order compelling discovery," an agency imposing such sanctions "asserts that for disobedience of its orders directing discovery, it can impose the sanctions first and let the judicial questions be asked later." Williams, *Authority of Federal Agencies to Impose Discovery Sanctions: The FTC—A Case in Point*, 65 Geo.L.J. 739, 756 (1977).[5]

In *Interstate Commerce Commission v. Brimson*, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047 (1894), the Supreme Court stated:

> The inquiry whether a witness before the [Interstate Commerce] Commission is bound to answer a particular question propounded to him, or to produce books, papers, etc., in his possession and called for by that body, is one that cannot be committed to a subordinate administrative or executive tribunal for final determination.

*Id.* at 485, 14 S.Ct. at 1136.

■ This language makes clear that challenges to agency subpoenas must be re-

---

**3.** *See also NLRB v. American Art Industries, Inc.*, 415 F.2d 1223, 1229–30 (5th Cir. 1969), *cert. denied*, 397 U.S. 990, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970); *Bannon Mills, Inc.*, 146 NLRB No. 81 (1964).

The instant case does not involve the "best evidence" rule. The precluded evidence would not merely prove the contents of documents but prove facts independent of the documents. *Cf. UAW v. NLRB*, 459 F.2d 1329, 1346–47 (D.C.Cir.1972) (Board erred in failing to draw adverse inference from party's failure to produce subpoenaed documents, even though enforcement had not been sought in district court).

The administrative law judge here indicated that he would draw adverse inferences from the respondent's failure to produce the personnel records, but concluded that "for the most part it was unnecessary" to do so.

We agree that "the adverse inference rule in no way depends on the existence of a subpoena," *UAW v. NLRB*, 459 F.2d at 1338, though we doubt, in view of our present holding, that "the willingness of a party to defy" an NLRB subpoena, prior to any district court proceed-ing, "strengthens the force of the preexisting inference." *Id.*

**4.** This provision probably does not require the agency to follow district court discovery procedures, *see P. S. C. Resources, Inc. v. NLRB*, 576 F.2d 380, 386 (1st Cir. 1978), but once a subpoena is issued these discovery procedures may be generally analogous to the methods sought to be used here.

**5.** Williams suggests that the power to impose discovery sanctions (and to determine the propriety of a subpoena) is inherently judicial and emerges from the contempt power. Williams, *Authority of Federal Agencies to Impose Discovery Sanctions: The FTC—A Case in Point*, 65 Geo.L.J. 739, 744 (1977). "Because the contempt power is not and cannot be vested in administrative agencies, those agencies lack the authority to impose discovery sanctions." *Id.*

He concludes that Congress has not vested agencies with this power and could not do so without violating due process by denying the party a fair opportunity to object to the discovery order. *Id.*

solved by the judiciary before compliance can be compelled. The agency "could not, under our system of government, and consistently with due process of law, be invested with authority to compel obedience to its orders by a judgment of fine or imprisonment." *Id.* Nor, we believe, may the agency impose discovery sanctions, which may have more serious consequences than a fine, before the judicial questions have been asked and answered.[6]

■ "Congress has made elaborate provisions for obtaining and enforcing [NLRB] subpoenas," and "[i]t was obviously its intention that this machinery be utilized." *NLRB v. C. H. Sprague & Son Co.*, 428 F.2d at 942. We may not infer that Congress intended to authorize agencies to bypass district court enforcement proceedings. An efficient and fair enforcement mechanism has been provided and was meant to be used. We therefore conclude that Congress granted the district courts exclusive authority to compel compliance with NLRB subpoenas.

■ Because the secondary evidence is essential to the finding that Lavendera and Guzman were improperly discharged and the agency lacked authority to bar rebuttal of it, we remand this portion of the case for the taking of additional evidence and an opportunity to seek enforcement of the subpoenas in district court. *See* 29 U.S.C. § 160(e).

Application for enforcement GRANTED in part, REMANDED in part.

KENNEDY, Circuit Judge, concurring specially:

I concur in the result.

---

**6.** Although *Brimson* makes reference to "fine or imprisonment" to compel obedience, its essential import is that a federal agency lacks authority to make a "final determination" whether a witness is "bound" to produce subpoenaed documents. The use of different sanctions does not render the agency's assertion of authority to make such a determination any less a usurpation.