**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff–Appellant,

v.

**FORD MOTOR CREDIT COMPANY,**
Defendant–Appellee.

No. 93–5081.

United States Court of Appeals,
Sixth Circuit.

Argued March 10, 1994.

Decided June 13, 1994.

Philip B. Sklover, Donald R. Livingston, E.E.O.C., Washington, DC, Katharine W. Kores, Joseph Ray Terry, William A. Cash, Jr., E.E.O.C., Memphis, TN, and Paula Bruner (argued and briefed), Washington, DC, for plaintiff-appellant.

Curtis L. Mack (argued and briefed) and Michael G. Canaras (briefed), Mack & Bernstein, Atlanta, GA, for defendant-appellee.

Before: MERRITT, Chief Judge; and BOGGS and SILER, Circuit Judges.

MERRITT, Chief Judge.

The Equal Employment Opportunity Commission appeals from a district court order enforcing but limiting the scope of an administrative subpoena issued by EEOC to the Ford Motor Credit Company in connection with an investigation of sex discrimination in employment at Ford's Memphis office. Because we find EEOC's data request too

broad and the district court's order ambiguous, we remand to the district court to establish the limits of the subpoena as three years and 300 days for all employees and twelve and a half years for the employee who brought the complaint, as set out in Section III below.

## I.

Ms. Wynn Sorsby began working at the Ford location in Memphis, Tennessee on January 15, 1980, at the entry level of Grade 3. In 1984, she was promoted to Grade 5, where she has remained ever since. On July 26, 1991, Sorsby brought a complaint to the Tennessee Human Rights Commission and EEOC that she had "continuously been denied promotions to Salary grade six supervisory positions and was last denied the position of Collection Supervisor on July 20, 1991." Sorsby charged that "[l]ess qualified males have been awarded these positions," and that she has been "discriminated against because of [her] sex (female)." The same male manager, Ronald Goss, had been responsible for promotion decisions since 1970.

Ford denied the charge of discrimination. EEOC then conducted a preliminary on-site investigation, finding "a scarcity of women in positions beyond Grade 5" at the Ford location. As a result, EEOC decided to "investigate further whether female employees had been prevented from advancing in their employment with Ford and whether Ford treated male employees on the promotion track differently[.]" EEOC therefore requested information about "other Ford employees who had been hired at salary Grade 3 and above." EEOC Brief at 5. Ford refused the request.

On April 8, 1992, EEOC issued an administrative subpoena *duces tecum* asking for the name, sex, date of hire, job title, starting grade level and salary, assignments or promotions with the company including job title, salary, and salary grade, address, telephone number, termination date, and discharge reason for each employee at the Memphis location from January 15, 1980, to the present. EEOC denied a Ford request to revoke or modify. On June 10, 1992, after Ford's renewed refusal to produce the requested material, EEOC filed a subpoena enforcement action in the district court.

EEOC asked for material going back twelve and a half years to early 1980, on the ground that "information regarding Ford's promotion practices and decisions during the charging party's period of employment is relevant to its investigation of her allegation that Ford continuously denied her a promotion to a grade 6 supervisory position because of her gender."

Ford filed an opposition, arguing that (1) the subpoena's time frame of 1980 to the present was excessive; (2) Ford did not have some of the information requested; (3) the information requested was irrelevant to Sorsby's complaint; and (4) the request for information was unduly burdensome.

Section 709(a) of Title VII of the Civil Rights Act of 1964 authorizes EEOC to conduct investigations of charges filed under section 706, 42 U.S.C. § 2000e–5.[1] An EEOC administrative subpoena may be judicially enforced only if it: (1) seeks relevant information; (2) is not unduly burdensome; and (3) is within the statutory authority of the EEOC. *University of Pennsylvania v. EEOC*, 493 U.S. 182, 191, 110 S.Ct. 577, 583, 107 L.Ed.2d 571 (1990); *see also EEOC v. Shell Oil*, 466 U.S. 54, 68–69, 72–73, 104 S.Ct. 1621, 1631, 1632–33, 80 L.Ed.2d 41 (1984).

The district court narrowed the temporal scope of the subpoena to the three years plus 300 days preceding Sorsby's complaint and the substantive scope to "information only relating to Wynn Sorsby and no other potential victims of employment discrimination,"[2]

---

1. In connection with any investigation of a charge filed under section 2000e–5 of this title, the Commission ... shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation. 42 U.S.C. § 2000e–8(a).

2. We note that the parties do not agree on what the district court meant by this. Among the members of this panel, as well, there is a difference of opinion as to the extent to which the

on the ground that most of the material requested was irrelevant to Sorsby's claim. The court noted that EEOC's request covered at least 100 employees, many of whom had not worked at Ford in years, and many of whom had never been in a position to be given or denied a promotion. The court also reasoned that material related to employees at Grade 3 could not be relevant because every employee started at that level. The court also seems to have felt that material related to Sorsby from the period before her promotion to Grade 5 could not be relevant, because she was in fact promoted to Grade 5 and because the complaint was about promotion to Grade 6.

The court noted that it usually limited data requests to three to four years' scope, and it suggested at the hearing that the data request was "burdensome." Finally, the court stated that the request was "arbitrary and an abuse of authority given to EEOC."

## II.

EEOC argues that this court must reverse the district court's order because it was based on a fundamental misunderstanding of the law in this area, especially: (1) the relation between the 300-day statute of limitations for bringing a complaint and the relevant period of investigation; and (2) EEOC's broad powers to investigate employment practices.

### A.

■ EEOC argues that the court below used the 300-day statute of limitations period incorrectly to limit the period of discovery and believes that the court confused the relevant "evidentiary date" and the "date for relief of liability." Under Title VII, an aggrieved employee must normally bring a charge within 300 days of the injury; put another way, normally no plaintiff can recover for any employment discrimination that happened more than 300 days before she brings a charge. Depending on the circumstances, however, investigation into a charge may require investigation into events much earlier than 300 days before.

In this case, to illustrate, Sorsby could not recover for any discrimination that happened more than 300 days before she brought her charge. EEOC insists, however, that it may look into events twelve and a half years earlier to determine whether there was a pattern or practice of discrimination at Ford which would go toward showing that Sorsby herself was discriminated against. EEOC correctly maintains that the two time periods are not rigidly linked. It is a separate question, however, exactly how many years' discovery EEOC is entitled to in this case.

EEOC points to the grant of discovery in the court below for a period of three years *and 300 days* as indicating that the court confused the two issues. More plausibly, it points to the record of the hearing to show that the court was confused. The court did seem to confuse the two periods when it stated that "Nothing could be relevant to failure to appoint her to a six before three hundred days from July 20, 1991. If it happened before that, it's tough."

However, the court had stated earlier that "there's a difference between the evidentiary date and the date for relief of liability." Moreover, a plausible reading of the "three

---

result we reach expands the scope of discovery granted below. In the district court's first order, Ford was directed

> to comply with the subpoena in all categories to a period of 300 days from the date of filing plus three years with the further authorization reserved for the EEOC to file supplemental requests for records pertaining to specific persons whose relevance to the charge of Wynn Sorsby is established in the investigation authorized herein.

EEOC moved to have this order altered or amended, and in its denial order the court below agreed with EEOC's characterization of its first order as having " 'limited the scope of the investigation to information only relating to Wynn Sorsby and no other potential victims of employment discrimination.' "

The district court may have meant to limit EEOC to three years and 300 days on Sorsby alone, or it may have meant to give EEOC access to records on all employees but limited to three years and 300 days rather than the twelve and a half years requested by EEOC. The record leaves this somewhat ambiguous. But for the purposes of this opinion we need not determine exactly what the court below meant, and we are unanimously of the view that the scope we have set in Section III is appropriate. To the extent that the orders in the court below differ, they are vacated.

years and 300 days" time period is that the court reasoned that EEOC was obviously entitled to investigate events during the 300–day statute of limitations period, and that an additional three to four years back before that seemed reasonable to pick up relevant history. Therefore, we do not find that the court incorrectly used the statute of limitations period to determine the relevant evidentiary period.

### B.

EEOC also argues that the district court ignored the broad investigative authority which Congress and the courts have granted the agency.

■ Commenting on EEOC's subpoena power under § 2000e–8, the Supreme Court has noted that "[s]ince the enactment of Title VII, courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer." *Shell Oil,* 466 U.S. at 68–69, 104 S.Ct. at 1631. We agree with EEOC that Congress intended for it to have broad access to information relevant to inquiries it is mandated to conduct, but this leaves open the question of exactly *what* material is broadly relevant to a given investigation. EEOC's position, as confirmed at oral argument, is essentially that it is entitled to any material which EEOC deems relevant in its discretion. We must reject this position. If Congress had meant for EEOC's determination of relevance simply to be accepted by the courts it would not have provided for judicial review of these data requests. As the Supreme Court has made clear, this court *may not enforce* an administrative subpoena unless the request seeks relevant material and is not unduly burdensome. *University of Pennsylvania,* 493 U.S. at 191, 110 S.Ct. at 1019; *Shell Oil,* 466 U.S. at 68–69, 72–73, 104 S.Ct. at 1631, 1632–33. The language from *Shell Oil* which we quote in the previous paragraph sheds light on how the courts are to view relevance but does not detract from the *court's* duty to determine relevance.

Essentially, this court's task is to weigh the likely relevance of the requested material to the investigation against the burden to

Ford of producing the material. In light of this, we cannot enforce EEOC's data request in full. EEOC asks Ford to produce employment records on all employees at the Memphis location during the entirety of Sorsby's employment there. Under this request, to take one hypothetical example, Ford would have to produce the records of someone hired in late 1981, who was never eligible for promotion and who quit or was fired in early 1982. The likely relevance of such an employee's history to Sorsby's claim of discrimination in the late 1980s and early 1990s is extremely tenuous indeed, and yet the likely burden to Ford of producing such information is substantial. Ford has indicated that many of the records EEOC seeks are no longer at the Memphis location and may even have to be reconstructed, and there may be many employees whose histories, like the one in our hypothetical, have little relevance to Sorsby's claim.

### C.

Having said that, however, we do agree with EEOC that employment context is relevant to a charge of employment discrimination, and that the district court's order may make it difficult for EEOC to establish that context. As EEOC argues, that context is provided both by Sorsby's own employment records, back to her hiring date, and by the employment and promotion history of other employees. Sorsby herself alleged "continuing" discrimination, not one isolated denial of promotion. "Comparative information," as EEOC states, "is absolutely essential to a determination of discrimination."

EEOC points out that its preliminary investigation at the Memphis site turned up a scarcity of women promoted beyond Grade 5. EEOC therefore had reason to suspect that the alleged discrimination may have extended beyond Sorsby. EEOC correctly points out that the appropriate scope of investigation depends on the circumstances of a particular case, and in this case we agree that the circumstances point to a broader inquiry than was granted below. Essential to Sorsby's claim is that she has been treated differently than similarly situated men. This

claim cannot be adjudicated without deciding whether she was in fact situated similarly to men who were promoted. It is therefore both reasonable and relevant for EEOC to have access to hiring and promotion information on other employees.

### III.

On the basis of the preceding discussion, we find that the proper scope of the data request is as follows:

(1) Ford must surrender to EEOC records (a) of any and all persons employed at the Memphis location (b) which pertain to the time period set by the district court, three years and 300 days prior to the date Sorsby filed her charge.

(2) Ford must also surrender to EEOC any and all records pertaining to Sorsby herself back to the date of her hiring.

Should investigation of the above material demonstrate EEOC's need to look at earlier records pertaining to specific employees, groups of employees, or the entire workforce, EEOC retains the right to petition the district court for access to additional material. EEOC would have to demonstrate that such documents are relevant, based on findings emanating from the earlier, more restricted search.[3]

We find that the material included in a data request of the scope we have just detailed is relevant to the inquiry EEOC is statutorily entitled and required to perform as a result of Sorsby's charge and that a request of such scope is not an abuse of EEOC's authority. The third prong of the *Shell Oil* test is that a request must not constitute an "undue burden," but since Ford indicated at oral argument that it would agree to the scope just described, we need not make any further finding on this point.

### IV.

Accordingly, we REMAND to the district court with instructions to order Ford to sur-

render to EEOC all documents within the scope we have set in Section III above.

---

**3.** We note that the district court itself granted EEOC the right to petition for access to additional records. *See* n. 2.