185 F.3d 602 (6th Cir. 1999)
 NATIONAL LABOR RELATIONS BOARD, PETITIONER-APPELLEE,
v.
DETROIT NEWSPAPERS, FORMERLY KNOWN AS DETROIT NEWSPAPER AGENCY; DETROIT NEWS, INCORPORATED, RESPONDENTS-APPELLANTS, DETROIT FREE PRESS, INCORPORATED, RESPONDENT.
 No. 98-1432
 U.S. Court of Appeals, Sixth Circuit
 Argued: March 17, 1999
Decided: July 22, 1999
 
 Appeal from the United States District Court for the Eastern District of Michigan at Detroit. No. 98-70386--Paul D. Borman, District Judge.
 Joseph P. Canfield, Theodore Niforos, Patricia A. Fedewa, National Labor Relations Board, Region Seven, Detroit, MI, Lori W. Ketcham (argued), National Labor Relations Board, Office of General Counsel, Margery E. Lieber (briefed), National Labor Relations Board, Special Litigation Branch, Washington, DC, for Petitioner-Appellee.
 Robert M. Vercruysse (argued and briefed), William E. Altman (briefed), Vercruysse, Metz & Murray, Bingham Farms, MI, for Detroit Newspapers and Detroit News, Inc.
 Before: Ryan, Norris, and Cole, Circuit Judges.
 Ryan, Circuit Judge.
 
 
 1
 The question presented is whether the federal district court erred in directing an administrative law Judge to decide whether certain documents, subpoenaed by the National Labor Relations Board in an ongoing labor dispute, were privileged, and therefore not subject to subpoena. We hold that the court did err, and reverse.
 
 
 2
 The ALJ in the underlying unfair labor practice proceeding directed the respondents, collectively, the Detroit Newspapers, to produce certain documents that had been subpoenaed by the NLRB. They refused, claiming that the attorney-client privilege and the attorney work-product doctrine protected them from having to do so. General counsel for the NLRB asked the ALJ to conduct an in camera review of the subpoenaed documents to determine which documents actually were protected by either of the privileges, but the Detroit Newspapers objected, claiming that a federal district court should make that determination. The NLRB then filed an application in the district court for an order requiring the newspapers to comply with the subpoena duces tecum. The district court held that the proceeding before theALJ was the proper forum for the in camera review of the documents and the ALJ was the proper person to determine whether the documents were protected by any privileges. Therefore, the court directed the Detroit Newspapers to produce the documents for review by the ALJ. For the reasons set forth below, we believe that the district court did not have the discretion to delegate this function to the ALJ; accordingly, we reverse the district court's judgment and remand for further proceedings.
 
 I.
 
 3
 On July 13, 1995, several unions struck the Detroit Newspapers, and the result was an acrimonious and sometimes violent labor dispute. The strike lasted until February 1997. During the strike, the Detroit Newspapers fired a great many striking employees for alleged misconduct. The unions filed a number of unfair labor practice charges with the NLRB based on separate incidents of discipline. The NLRB issued complaints, and the complaints were consolidated into what the parties characterize as a "massive" NLRB hearing.
 
 
 4
 While the proceedings were underway before the ALJ, the NLRB issued three subpoenas duces tecum which sought, among other things, investigative reports, documents, and lawsuit information regarding several incidents of violence related to the strike.
 
 
 5
 The Detroit Newspapers filed a petition to revoke the subpoena, claiming that the material sought was protected by the attorney-client privilege or the attorney work-product doctrine. The ALJ denied the petition, thereby effectively requiring the Detroit Newspapers to produce the requested information. The newspapers persisted in their refusal to produce the requested documents for an in camera review by the ALJ, and insisted that a federal district Judge, rather than the ALJ, review the documents in camera to determine whether they were indeed protected. The NLRB then filed a lawsuit in the federal district court requesting an order to require the Detroit Newspapers to comply with the subpoena.
 
 
 6
 The district court, after noting that its authority under the National Labor Relations Act to intervene in the parties' ongoing labor dispute before the ALJ, particularly with respect to enforcing the NLRB's subpoena, was very limited, concluded that the proceedings before the ALJ would give the Detroit Newspapers "an adequate and meaningful opportunity to raise any privilege claims." While the court recognized that if the claim of privilege was upheld, the ruling would apply to bar consideration of the requested documents in the NLRB proceedings, it found that any privilege objections should be resolved by the ALJ. The Detroit Newspapers appealed.
 
 II.
 A.
 
 7
 We must decide whether the district court had the discretion to refuse to review the documents to determine whether they were privileged, and to delegate that decision making responsibility to the ALJ hearing the underlying labor dispute. The newspapers argue that the court did not have discretion to delegate the function of reviewing the documents for their privileged status to the ALJ. They also argue that handing the documents over to the ALJ for an in camera review is the substantial equivalent to producing the documents to the General Counsel of the NLRB, because both are part of the same agency. The NLRB, on the other hand, argues that the proper standard for our review in this case is whether the district court abused its discretion when it determined that the ALJ should have the first opportunity to determine if the subpoenaed documents were privileged. The NLRB also argues that the district court did not abuse its discretion because it was more efficient for the ALJ to review the documents first, in that the district courtmay not have had anything to decide if the ALJ agreed with the Detroit Newspapers that the documents were indeed privileged.
 
 
 8
 As is evident from this back and forth between the parties, both sides seem to assume that the underlying question is whether the district court "abused its discretion," and therefore, that abuse of discretion is our standard of review. It isn't, but we cannot fault the parties for thinking it is.
 
 
 9
 When a district court purports to exercise discretion in a matter with respect to which it has no discretion, it has misperceived what the law permits it to do, and therefore, commits an error of law. Now, it may be that such a court will have reached the right result, as a matter of law, but it will not have done so because it had discretion to go one way or the other, as it saw fit. In a situation like that, we would, upon review, conclude that we affirm the decision, not for the reason that the district court did not abuse its discretion (because it had none), but for the reason that the district court's decisional result was not an error of law.
 
 
 10
 Entrenched in the strange lexicon of federal "abuse of discretion" jurisprudence is the notion that a district court abuses its discretion when it commits an error of law. See United States v. Jones, 107 F.3d 1147, 1153 (6th Cir.), cert. denied, 117 S. Ct. 2527 (1997). It is too late in the day, and, in this case, would be too great a distraction, to examine how it can be that a district court can be said to have "abused its discretion" for failing to apply a rule of law it was without discretion to fail to apply. One would think the failure to apply the rule of law would be an error of law, not an abuse of discretion.
 
 
 11
 We decline the parties' invitation to incant once again the inaccurate rhetoric of federal "abuse of discretion" jurisprudence, and instead, declare simply that because the district court had no "discretion" to do what it did, but was obligated, as a matter of law, either to decide the privilege issue itself or delegate the duty to an ALJ, we conduct de novo review of the court's decision.
 
 B.
 
 12
 The NLRB is authorized to subpoena documents of any party "being investigated or proceeded against that relates to any matter under investigation or in question." Labor-Management Relations Act, § 11(1), 29 U.S.C. § 161(1); NLRB v. ITT Telecomms., 415 F.2d 768, 769 (6th Cir. 1969). If a party refuses to comply with a subpoena, the "district court... shall have jurisdiction to issue to such person an order requiring such person to appear before the Board... to produce evidence if so ordered." Id. § 11(2), 29 U.S.C. § 161(2). Manifestly, the district court ordinarily will have discretion to determine whether it will issue such an order.
 
 
 13
 In a subpoena enforcement case brought by the Equal Employment Opportunity Commission under Title VII, which incorporated section 161 of the LMRA, see University of Pennsylvania v. EEOC, 493 U.S. 182, 191 (1990), this court held that a "court may not enforce an administrative subpoena unless the request seeks relevant material and is not unduly burdensome." EEOC v. Ford Motor Credit Co., 26 F.3d 44, 47 (6th Cir. 1994) (emphasis omitted). We also stated that "this court's task is to weigh the likely relevance of the requested material to the investigation against the burden... of producing the material." Id. The resulting decision, of course, would be an exercise of discretion reviewed only for abuse.
 
 
 14
 Despite the general policy that the NLRB should have jurisdiction in labor-management disputes, Congress specifically reserved to the federal courts the authority to provide for enforcement of subpoenas. We believe it is implicit in the enforcement authority Congress has conferredupon the district court, see id., that the district court, not the ALJ, must determine whether any privileges protect the documents from production. The district court does not have the discretion to delegate an Article III responsibility to an Article II Judge.
 
 
 15
 We find support for this proposition in an analogous Ninth Circuit case, NLRB v. International Medication Systems, Ltd., 640 F.2d 1110 (9th Cir. 1981), wherein the court stated that "challenges to agency subpoenas must be resolved by the judiciary before compliance can be compelled." Id. at 1115-16. We agree with the Ninth Circuit that "Congress has made elaborate provisions for obtaining and enforcing [NLRB] subpoenas, and [i]t was obviously its intention that this machinery be utilized." Id. at 1116 (internal quotation marks and citation omitted). We believe that the district court had the obligation, as a matter of law, to determine whether the subpoenaed documents were protected by some privilege, and had no discretion to delegate that duty to the ALJ.
 
 III.
 
 16
 We recognize that this question is a matter of first impression in this circuit and that the district court was navigating uncharted waters. However, we conclude that we are obligated to REVERSE the judgment of the district court, and REMAND this case for further proceedings consistent with what we have written.