**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SACRAMENTO CLINICAL LABORATORY, INC., Respondent.**

No. 79–7481.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1980.

Decided July 11, 1980.

Frederick Havard, Washington, D.C., for petitioner.

Kathleen M. Kelly, argued and J. Richard Thesing, on brief, Little, Mendelson, Fastiff & Tichy, San Francisco, Cal., for respondent.

Before WRIGHT, KENNEDY and HUG, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

We are asked to enforce three orders of the Board finding Sacramento Clinical Laboratory (Sacramento) in violation of several provisions of the National Labor Relations Act (the Act). To the extent that the Board affirmed the findings of the Administrative Law Judge (ALJ) we enforce its order, but we find that the Board's reversals of those findings are unsupported by substantial evidence. To that extent we deny enforcement.

*FACTS*:

Sacramento performs tests for hospitals, clinics and doctors and employs about 160 persons. This case concerns 12 of them, Sacramento's couriers, who collect specimens for testing and return test results to Sacramento's clients.

The couriers voted in March 1976 to be represented by Teamsters Local No. 38 (the Union). The Union was certified on April 12, 1977. Bargaining began in April 1978 and a second meeting was held on May 4. A third session was scheduled for May 16 but was called off when Sacramento informed the Union that it would no longer bargain. This withdrawal of recognition followed delivery to Sacramento of a petition by six of the 12 employees in the bargaining unit requesting that the employer withdraw recognition.

*ISSUES*:

Does substantial evidence support the Board's findings:

(1) that Sacramento violated 29 U.S.C. § 158(a)(1) by threatening employees with loss of benefits?

(2) that Sacramento violated 29 U.S.C. § 158(a)(3) and (1) by refusing to give an employee a day off because she supported the Union?

(3) that Sacramento violated 29 U.S.C. § 158(a)(5) and (1) by withdrawing recognition from the Union?

*DISCUSSION* :

*Standard of Review*

We shall enforce the Board's order if it is supported by substantial evidence on the record as a whole. *Butler-Johnson Corp. v. NLRB*, 608 F.2d 1303, 1305 (9th Cir. 1979). In a case such as this in which the Board has rejected the ALJ's findings, "the Board's findings of fact will be scrutinized more critically," although the standard of review does not change. *Id.*

1. *The Keillor Discussion: Threat or Prediction*?

Shortly before the May 4 bargaining session courier Deborah Keillor discussed the Union with William McKnight, Sacramento's business manager. McKnight encouraged her interest in "finding out what is going on," and told her that if the Union came she would not be able to come to talk with him directly. Instead, she would have to go "through channels," perhaps a shop steward. He said that if the Union came in it would make decisions for the couriers.[1]

If McKnight's comments were a threat, made to discourage union activity, they violated § 8(a)(1) and § 8(a)(3) of the Act.[2] If, however, he was merely predicting the effect of unionization there was no violation, for:

1. Before the ALJ McKnight testified that he could not recall the last statement. The judge chose to credit Keillor's testimony, and [we] defer to his assessment of it.

2. § 8(a)(1), (3) of the Act, 29 U.S.C. § 158(a)(1), (3) provided:
   (a) It shall be an unfair labor practice for an employer—

the employer is free to express opinions with respect to the consequences of unionization which have some reasonable basis in fact.

*Hecla Mining Co. v. NLRB*, 564 F.2d 309, 314 (9th Cir. 1977).

The Board's conclusion that McKnight's statements were threats is not supported by substantial evidence. Rather, we agree with the ALJ that McKnight "was not threatening anybody and that the employees were only being reminded of the substantive meaning of collective bargaining."

As the Board itself has held, it is a "fact of industrial life" that, when a union represents employees they will deal with the employer indirectly, through a shop steward. *Bostich Division of Textron*, 176 NLRB 377 (1969).

As for McKnight's comment that the Union would make all the decisions, we agree with the ALJ that

McKnight's remarks indicated his opinion of what the Union might do and not what was within [Sacramento's] power to make come true.

The nature of collective bargaining calls for group rather than individual decision-making. Moreover, McKnight was discussing a situation completely beyond his control. To characterize the statement as more threat than prediction is to blur the line between the two and render it imperceptible. We decline to enforce this portion of the order.

2. *The Bielenberg Incident*

Courier Donna Bielenberg, aside from working full-time for Sacramento, created jewelry to sell at craft fairs. When she came to work for Sacramento she was promised that she would be allowed to take off from work periodically to attend craft fairs if a suitable replacement could be

   (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 [29 USCS § 157];
   (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.

found. The record shows several occasions on which this was allowed.

On May 4, 1978 she told supervisor Anton of a fair to take place that weekend, and asked for time off to attend. Anton told her: "By the way, you know when the Union goes through, you will not be able to have days off for fairs any longer."

In mid-June Bielenberg asked for time off to attend a fair on July 3. When Anton told her she would have no days off for fairs until the union matter was settled, Bielenberg protested that she had been hired with the understanding that she would have such time off. Anton responded that that was before McKnight found out that Bielenberg was for the Union. She was not excused from work on July 3.

Sacramento denies that Anton made such statements. Even if she did, Sacramento contends, the reason for the denial of time off was the press of business before the holiday. There is evidence that two other requests for time off on that day were denied and that Sacramento was short-handed.

■ Despite this mitigating evidence, there is substantial evidence that the "moving factor" in the denial of a day off was anti-union animus. As this court has noted, when there are two motives for an action, one permissible and the other impermissible, "the better rule is . . . that the improper motive must be shown to have been the *dominant one*." *L'Eggs Products, Inc. v. NLRB*, 619 F.2d 1337 at 1341 (9th Cir. 1980) (Emphasis in original).

■ The fact that other employees were also denied time off is not persuasive, for they were not hired with the understanding that was given to Bielenberg. Anton's comment that the understanding was

reached before McKnight learned that Bielenberg was for the Union provides substantial evidence that the dominant motive for the denial was impermissible. This part of the Board's order should be enforced.

### 3. *Withdrawal of Recognition*

Part-time courier David Morrill, one of twelve employees in the bargaining unit, was unhappy with unionization, fearing that union dues would be too high to make employment feasible for part-timers. He drafted a petition urging Sacramento to withdraw recognition of the Union, and solicited his fellow workers for their signatures.[3] Morrill apparently acted on his own. There is no evidence that management helped him write the petition or in any way worked toward acquisition of signatures.

Morrill campaigned actively for the petition. He told three other part-time workers that they would lose their jobs if the Union came in. Although there is evidence that Sacramento knew of the petition's circulation, there is no evidence that Morrill was operating on management's behalf.

After Morrill obtained six signatures, he submitted the petition to McKnight. McKnight then wrote to the Union that Sacramento was withdrawing its recognition since the Union no longer represented a majority of the employees in the bargaining unit. Sacramento has since refused to bargain with the Union, and the Board found Sacramento in violation of § 8(a)(5) and § 8(a)(1) of the Act.[4]

This court recently set out the rule in cases such as this:

> In an unfair labor practice proceeding before the Board the burden is upon the General Counsel to establish by a preponderance of evidence that an unfair labor

---

3. The petition reads:
   Dear Mr. McKnight:
   The Couriers who have signed below do not wish to be represented by the Teamsters Union. Most of them were not employed by Sacramento Clinical Laboratory at the time of the original vote.
   We request that action be taken to cease all negotiations with the Union.

4. § 8(a)(5) of the Act makes it an unfair labor practice:
   > (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a) [29 USCS § 159(a)].

practice has occurred. *NLRB v. United Brotherhood of Carpenters & Joiners, etc.,* 531 F.2d 424, 426 (9th Cir. 1976). Where an employer has been charged with a violation of section 8(a)(5), refusal to bargain, the General Counsel must show that the union represented a majority of the employees in the unit at the time the employer refused to bargain with the Union. *NLRB v. Tahoe Nugget, Inc.,* 584 F.2d at 297.

The General Counsel is assisted by a presumption of majority union support in its attempt to meet its burden of proving that the employer unlawfully refused to bargain.

An employer may rebut the presumption by presenting sufficient evidence to demonstrate that the union was actually in the minority or that the employer had a good faith reasonable doubt of the union's majority support at the time of the refusal to bargain. *Id.* If the presumption is deemed rebutted, then the General Counsel must come forward with evidence to satisfy its burden of proof. *National Cash Register Co. v. NLRB,* 494 F.2d 189 (8th Cir. 1974).

*NLRB v. Silver Spur Casino,* 623 F.2d 571 (9th Cir. 1980).

The Board, in reversing the ALJ, held that Sacramento's refusal to bargain with the Union violated the Act. The Board discounted the petition because three signatures were "tainted" by Morrill's "threats" of loss of jobs. The Board likened this case to those in which union authorization cards signed under duress were held invalid.

We find no substantial evidence to support this finding. While it is true that Morrill urged other part-time workers to sign the petition and predicted dire consequences of unionization, these statements cannot be attributed to management. We think the ALJ put it well:

> The employees were in a position to evaluate Morrill's remarks and Morrill was not in any position to control or even influence [Sacramento's] actions.

■ The petition, signed by half the members of the bargaining unit, is sufficient evidence that the Union has lost its majority and rebuts the presumption. We recently held that

> If the presumption is deemed rebutted, then the General Counsel must come forward with evidence to satisfy its burden of proof [that the union represented a majority of employees in the unit at the time the employer refused to bargain]. *Id.*

■ On this record we cannot say that the General Counsel has met that burden. He has offered no proof that Morrill was acting as an agent of management or that Morrill's threats were perceived by the signers of the petition as management threats. Absent such evidence, we conclude that Sacramento has rebutted the presumption of majority union support by showing an actual loss of majority status.

We need not discuss the employer's alternative method of rebutting the presumption, i.e., establishing its good faith reasonable doubt of majority status. This portion of the Board's order is denied enforcement.

*CONCLUSION:*

In summary, we enforce the Board's order that denial of Donna Bielenberg's time off was an unfair labor practice. We deny enforcement of the orders regarding the statement to Deborah Keillor and refusal to bargain.

SO ORDERED.