**K–MART CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 79–7249.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 12, 1980.

Decided Aug. 29, 1980.

Carl W. Robertson, Los Angeles, Cal., for petitioner.

Jerrold J. Wohlgemuth, Washington, D.C., for respondent.

Before WRIGHT and ANDERSON, Circuit Judges, and BELLONI,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

This case raises the issue: when does an employer cross the line separating tough negotiating from bad faith surface bargaining. Substantial evidence in this record supports the Board's finding that the em-

* Honorable Robert C. Belloni, United States District Judge of the District of Oregon, sitting by designation.

ployer crossed the line and violated the National Labor Relations Act. We also agree with the finding that the employer refused to supply relevant information. The Board's order will be enforced.

*FACTS*

K-Mart, a nationwide chain of retail stores, maintains distribution centers throughout the country. In October, 1976, the Board certified Truckdrivers and Helpers Local 696 (the Union) to represent workers in K-Mart's center in Lawrence, Kansas. Collective bargaining began in November, 1976, and ended in January, 1978, with no agreement.

The company promised to make its comprehensive wage offer when it received the Union's fringe benefits proposal on March 1, 1977. The company made an offer on July 27, 1977. The Union asked for the locations of K-Mart's other distribution centers and the dates and amounts of the latest wage increases at those centers. K-Mart withheld the locations for six months, and never did furnish the wage information.

The Union filed complaints with the Board, alleging that K-Mart breached its duty to bargain in good faith and unfairly refused to supply relevant information. The ALJ found for the Union on both contentions, and the Board adopted those findings. K-Mart appeals from the Board's decision, and the Board seeks enforcement of its order.

*DISCUSSION*

1. *Standard of Review*

We affirm the Board's findings when supported by substantial evidence. *NLRB v. Sacramento Clinical Laboratory*, 623 F.2d 110 at 111 (9th Cir. 1980). When the Board is required to draw inferences from external conduct, "we are not at liberty to draw an inference different from the one drawn by the Board, even though it may seem more plausible and reasonable to us." *Queen Mary Restaurants Corp. v. NLRB*, 560 F.2d 403, 407 (9th Cir. 1977). When the

Board determines that requested information is relevant,

> the Board's determination as to whether the requested information is relevant in a particular case is given great weight by the courts either because it is a finding of fact, which is conclusive if supported by substantial evidence, or because it is a finding on a mixed question of law and fact which is within the particular expertise of the Board.

*San Diego Newspaper Guild, etc. v. NLRB,* 548 F.2d 863, 867 (9th Cir. 1977).

### 2. *Surface Bargaining*

■ Surface bargaining is defined as "going through the motions of negotiating," without any real intent to reach an agreement.[1] It violates the Act's requirement that parties negotiate in "good faith." It is prohibited because, as one commentator explained:

> The bargaining status of a union can be destroyed by going through the motions of negotiating almost as easily as by bluntly withholding recognition . . . As long as there are unions weak enough to be talked to death, there will be employers who are tempted to engage in the forms of collective bargaining without the substance.

Cox, "The Duty to Bargain in Good Faith," 71 Harv.L.R. 1401, 1413 (1958).

Surface bargaining, by definition, may look like hard bargaining, and is therefore difficult to detect and harder to prove. This court has noted:

> [t]he question whether an employer's conduct demonstrates an unwillingness to bargain in good faith or is merely hard bargaining often forces the trier to draw difficult inferences from conduct to motivation.

*Queen Mary Restaurants, supra,* 560 F.2d at 407.

■ In the present case, the ALJ pointed to the following evidence to support the inference of bad faith:

(1) the wage proposals actually put forward by K-Mart;

(2) K-Mart's delay in making its proposals; and

(3) K-Mart's refusal to supply requested information.[2]

Before reviewing each contention, we note the inherent problem in relying on a party's proposals to support a finding of bad faith. Allowing the Board to review a party's bargaining position comes "dangerously close" to denying the parties the freedom to negotiate private contracts. See Gorman, *Basic Test on Labor Law* (West, 1976) at 489. As Professor Cox explained:

> The trickiest questions are raised by the use of evidence concerning the substantive positions taken by the employer during the negotiations. For the Board to appraise the employer's bargaining position with respect to some major issue as a means of ascertaining his good faith would involve passing judgment upon the reasonableness of his proposals and thus would apply pressure to make concessions. There are too many reasons why an employer who is willing to contract with a union might wish to deny a wage increase or maintain an open shop for the Board to draw an inference of bad faith from the unreasonableness of his position.

Cox, *supra,* 71 Harv.L.R. at 1419.

This court has recognized that, while the bargaining position may provide evidence of bad faith, there must be additional substantial evidence to support the finding:

> in our review of the evidence in this case, we can consider the regressive nature of the wage proposals made by the company and the dropping of existing terms favorable to the union. However, there must be additional evidence before we can ac-

---

1. Cox, "The Duty to Bargain in Good Faith," 71 Harv.L.R. 1401, 1413 (1958).

2. Refusal to furnish requested information is evidence of surface bargaining, *Queen Mary Restaurants Corp. v. NLRB,* 560 F.2d 403, 408

(9th Cir. 1977), and is an independent violation of the Act's requirement that parties bargain in good faith. *NLRB v. Acme Industrial Co.,* 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967).

cept the Board's inference that the company failed to bargain in good faith. *NLRB v. Pacific Grinding Wheel Co., Inc.*, 572 F.2d 1343, 1348–1349 (9th Cir. 1978).

■ We agree with the ALJ's characterization of the wage proposals as "meager."[3] In an age of double digit inflation, an offer of little or no wage increase is an effort to decrease wages. The ALJ could infer that the company was not bargaining seriously.

The company's delay in presenting the proposal also affords substantial evidence to support the inference. The ALJ concluded from this delay that the company was "dallying" with the Union, an apt term.

In *Queen Mary Restaurants, supra*, 560 F.2d 403, we reviewed several instances in which the employer failed to put forth promised proposals. We concluded: "This dissembling supports the finding that the Company was engaged in surface and bad-faith bargaining." 560 F.2d at 410. The same may be said here.

Our decision is consistent with *NLRB v. Tomco Communications, Inc.*, 567 F.2d 871 (9th Cir. 1978), in which a Board finding of surface bargaining was held not to be supported by substantial evidence. The administrative law judge had found the employer bargained in good faith, a fact borne in mind by the court in evaluating the substantiality of the evidence. *Id.* at 877. The factual bases for the Board's finding were almost entirely comprised of the substantive positions taken by the employer, and were less substantial than those present here. The bargaining tactics used by the employer did not support an inference of bad faith. *Id.* at 882–83.

### 3. Refusal to Furnish Requested Information

■ The refusal to furnish requested information is in itself an unfair labor practice, and also supports the inference of surface bargaining. The key inquiry is relevance: "If the information requested has no relevance to any legitimate union collective bargaining need, a refusal to furnish it could not be an unfair labor practice." *San Diego Newspaper Guild, etc. v. NLRB, supra*, 548 F.2d at 867, *quoting Emeryville Research Center, Shell Dev. Co. v. NLRB*, 441 F.2d 880, 883 (9th Cir. 1971). Our review of the Board's determination that the information was relevant is limited. Courts have also said that the determination of relevance "must follow a more liberal standard," following "a discovery-type standard." *San Diego Newspaper Guild, supra*, 548 F.2d at 867, n.7.

■ The Union requested information related to wage increases at K-Mart's other distribution centers. This information, explained the Union, would enable it to verify the company's assertion that the latter's policy was to set wages in accordance with community standards. Only by comparing the wages paid in other communities with the standard wages there, could the Union know if this were true.

In *NLRB v. Truitt Manufacturing Co.*, 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027 (1956), the Supreme Court held that when information is needed to substantiate an employer's claim that it cannot afford a wage increase, the information is relevant. The Court explained:

> If such an argument is important enough to present in the give and take of bargaining, it is important enough to require some sort of proof of its accuracy.

351 U.S. at 152–153, 76 S.Ct. at 756.

In a case closely analogous to the instant one, the Sixth Circuit applied this holding to a union request for substantiation of the company's assertion that it based its offer on prevailing local wage rates. The court stated:

---

**3.** The company offered no increase in fringe benefits and the following wage increases: 15¢ per hour for starting employees (from $3.55–$3.70); 13¢ per hour for those with 60 days to 6 months service (from $3.72–$3.85); 10¢ per hour for those with 6 months service (from $3.85–$3.95); and 2¢ per hour for those with up to 18 months service (from $4.23–$4.25). Those with more than 18 months service were offered no increase. The proposal also included a broad management rights provision.

The *Truitt* rational has not been confined to cases in which the employer's defense is inability to pay. *N.L.R.B. v. Western Wirebound Box Co.*, 356 F.2d 88, 90–91 (9th Cir. 1966). Where, as here, the employer defends its wage scale by contending it is "proper," and implements a policy of paying wages commensurate with the local wage standards, then good faith bargaining requires the production of reasonable proof to substantiate his claims.

*General Electric Co. v. NLRB*, 466 F.2d 1177, 1184 (6th Cir. 1972). This court cited the *General Electric* case with approval in *NLRB v. Pacific Grinding Wheel Co., Inc.*, supra, 572 F.2d at 1348.

*CONCLUSION*

The requested information was relevant to the bargaining sessions, and the company's refusal to supply it was an unfair labor practice. The refusal and the other evidence discussed above provide substantial evidence to support the Board's finding of bad faith bargaining. The order of the Board is to be enforced.