HOTEL, MOTEL AND RESTAURANT EMPLOYEES AND BARTENDERS UNION LOCAL NO. 19, Hotel and Restaurant Employees and Bartenders International Union, AFL–CIO, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Burger Pits, Inc., and Self Serv Food Corp., Inc., Intervenor-Respondent.

No. 85–7106.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 13, 1985.

Decided March 25, 1986.

David Rosenfeld, William A. Sokol, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for petitioners.

William Stewart, N.L.R.B., Washington, D.C., for respondent.

Susan Ardissan, M. Armon Cooper, Lukens, St. Peter & Cooper, San Francisco, Cal., for intervenor-respondent, Burger Pits, Inc.

Before SNEED, KENNEDY and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge.

We review the NLRB decision that Burger Pits, Inc., did not violate sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and 158(a)(5) (1982), by withdrawing recognition from and refusing to bargain with the Hotel, Motel, Restaurant Employees and Bartenders Union, Local 19 (Union). The Union asks us. to review (1) whether the NLRB correctly applied the law regarding the presumption of continuing majority support for a union and an employer's good faith doubt of that support and (2) whether the NLRB's finding that Burger Pits had a good faith reasonable doubt of the Union's continuing support is sustained by substantial evidence in the record. We find that the NLRB correctly applied the law and that the record supports its findings of fact.

## I. FACTS

Hotel, Motel, Restaurant Employees and Bartenders Union, Local 19 (Union) represented Burger Pits employees. Burger Pits entered into successive collective bargaining agreements with the Union, the most recent of which was effective through May 31, 1980. On May 29, 1980, Burger Pits and the Union agreed to extend the contract through June 30, 1980.

Under the contract, Union representatives had the right to enter the kitchen areas of Burger Pits facilities to investigate employee status and work conditions. After May 31, however, Burger Pits refused to grant Union representatives access to the kitchen areas. No evidence was submitted, however, that any Union representatives sought access.

As of June 1, 1980, Burger Pits employed 276 employees in the bargaining unit. Between June 1 and June 3, relief cook Turrick Robbins collected 180 signatures on an employee petition which stated that the signers "no longer wish[ed] to be represented by the [Union]." Robbins presented

the petition to Burger Pits Vice President Albert Berger on June 3, 1980. When he presented the petition, Robbins told Berger that he had collected the signatures on his own initiative and that the employees "willingly signed the petition" at "almost every location."

Berger contacted his attorney who, on June 6, sent to the Union written notice that Burger Pits no longer recognized the Union as the employees' bargaining representative. After June 6, but before the expiration of the contract on June 30, Burger Pits unilaterally instituted new health and welfare coverage and ceased making the contractually required contributions to the existing health and welfare fund and pension plan.

On June 16, 1980, the Union filed an unfair labor practice charge, alleging that Burger Pits had violated Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), 158(a)(5) (1982). The Union alleged Burger Pits had locked out Union representatives, unilaterally changed terms and conditions of employment during the term of the contract extension, and refused to recognize and bargain with the Union.

The Administrative Law Judge decided that Burger Pits had engaged in unfair labor practices and ordered a broad "make-whole" relief and a bargaining order. Burger Pits sent its Exceptions to the ALJ's decision to the NLRB.

On December 14, 1984, the NLRB upheld the ALJ's Conclusion of Law that Burger Pits had violated sections 8(a)(1) and 8(a)(5) but found that Burger Pits had a good faith reasonable doubt of the Union's majority status. The NLRB refused to enforce the order to bargain. It further held that because Burger Pits had failed to recognize the Union for purposes of its contract obligations a make-whole remedy was appropriate for the contract period but not beyond.

The Union appealed, alleging that the NLRB failed to apply correctly the presumption of a union's continuing majority support, and that the record failed to provide substantial evidence sufficient to justify a finding that Burger Pits had a good faith doubt of the Union's majority support.

## II.  STANDARD OF REVIEW

A court reviewing an NLRB decision looks to see "if the Board correctly applied the law" and determines "if the Board's findings of fact are supported by substantial evidence on the record viewed as a whole." *Whisper Soft Mills, Inc. v. NLRB*, 754 F.2d 1381, 1384 (9th Cir.1985). Although a reviewing court reviews questions of law de novo it should give considerable deference to the Board's expertise in construing and applying the labor laws. *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *Mingtree Restaurant, Inc. v. NLRB*, 736 F.2d 1295, 1297 (9th Cir.1984). Thus, with some deference to the NLRB, we review de novo whether the NLRB correctly applied the presumption of a union's majority status.

With respect to questions of fact, however, the NLRB's findings are conclusive if supported by substantial evidence in the record considered as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 484–88, 71 S.Ct. 456, 462–64, 95 L.Ed. 456 (1951). Thus, in reviewing whether the NLRB's finding that Burger Pits had a good faith doubt of the Union's continuing majority support, we look to the record for substantial evidence.

## III.  ANALYSIS

A.  The NLRB correctly applied the law regarding a union's presumption of continuing majority support and an employer's good faith doubt of that support.

As long as a union is certified or voluntarily recognized, the employer has a duty to bargain. A refusal to bargain is a violation of sections 8(a)(1) and 8(a)(5). Once a union is certified or recognized it enjoys a presumption of continued majority

status which is irrebuttable for a reasonable time, usually one year, and is rebuttable thereafter. An employer may rebut the presumption of continued majority status if it shows by clear, cogent, and convincing evidence that the union was in the minority or that the employer had a good faith reasonable doubt of majority status. *See Brooks v. NLRB,* 348 U.S. 96, 104, 75 S.Ct. 176, 181, 99 L.Ed. 125 (1954); *Mingtree Restaurant,* 736 F.2d at 1296–97. The reasonable doubt must be asserted in good faith and may not be raised in the context of any employer activities aimed at causing disaffection with the union. *NLRB v. Carilli,* 648 F.2d 1206, 1216 (9th Cir.1981); *Clear Pine Mouldings, Inc. v. NLRB,* 632 F.2d 721, 730 (9th Cir.1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2317, 68 L.Ed.2d 841 (1981).

Once the employer has presented sufficient evidence to rebut the presumed majority status, "the General Counsel must come forward with the evidence that on the refusal to bargain date the union in fact did represent a majority of employees ... or that the refusal to bargain was not predicated upon a good faith and reasonably grounded doubt of the union's continued majority status." *National Cash Register v. NLRB,* 494 F.2d 189, 194 (8th Cir.1974); accord *NLRB v. Sacramento Clinical Laboratory, Inc.,* 623 F.2d 110, 114 (9th Cir. 1980); *NLRB v. Silver Spur Casino,* 623 F.2d 571, 577 (9th Cir.1980), *cert. denied,* 451 U.S. 906, 101 S.Ct. 1973, 68 L.Ed.2d 294 (1981). If the General Counsel presents evidence showing that the union's decline in support was attributable to the employer's misconduct, the employer's claim of a good faith reasonable doubt fails. Absent such evidence, the employer prevails. *See NLRB v. Sacramento Clinical Laboratory,* 623 F.2d at 114; *Dalewood Rehabilitation Hospital, Inc. v. NLRB,* 566 F.2d 77, 80 (9th Cir.1977).

■ Thus, a good faith defense to a refusal to bargain charge requires the employer to present clear, cogent, and convincing evidence of (1) a reasonable good faith doubt of majority status (2) in a context free of employer activities aimed at causing disaffection. If the General Counsel then fails to come forward with a rebuttal, the NLRB must find that the employer has a good faith defense.

■ With regard to Burger Pits, the NLRB correctly applied the presumption of continuing majority support. The Union, however, alleges that the NLRB failed to recognize that Burger Pits had violated the second requirement of the good faith defense and, with regard to that issue, the NLRB improperly shifted the burden of proof to the Union. The Union maintains that the employer's defense is tainted and without merit because Burger Pits locked out union representatives at the time signatures were obtained on Robbins' petition.

The existence of an unfair labor practice prior to the withdrawal of recognition, however, "does not necessarily mean that an employer's action is in bad faith." *NLRB v. Nu-Southern Dyeing & Finishing, Inc.,* 444 F.2d 11, 15–16 (4th Cir.1971). Rather, the activity must be of such a character "as to either affect the Union's status, cause employee disaffection, or improperly affect the bargaining relationship itself." *Guerdon Industries, Inc.,* 218 NLRB 658, 661 (1975). *See also Nu-Southern Dyeing & Finishing,* 444 F.2d at 16 (the unfair labor practice must "significantly contribute to [the] loss of majority or to the factors upon which a doubt of such a majority is based").

Consistent with these principles, the NLRB found that lack of access to the kitchen areas after May 31 did not "taint" the employee petition which was the grounds for Burger Pits' good faith doubt of continuing majority support. The NLRB concluded:

The [ALJ] found that after 31 May the Respondent unlawfully refused to grant union representatives access to its kitchen areas. We note that this misconduct began prior to the submission of the petition on 3 June, and prior to employee Robbins' collection of the signatures between 1 and 3 June. However, we think it clear that this misconduct was un-

related to the massive disaffection with the Union which the petition reflects. We conclude that this unfair labor practice "was not of such a character as to either affect the Union's status, cause employee disaffection, or improperly affect the bargaining relationship itself." (Footnote omitted)

The company's vice president's testimony supports the NLRB's conclusion; it reveals a brewing discontent with the Union which was neither connected with nor caused by the company's lockout. As early as March, 1980, most of the employees were not paying dues and "just weren't in favor of the Union." Further, during the year or two prior to the withdrawal of recognition, Union representatives had not visited most of the company's facilities. No evidence was submitted that any union representative sought access during the period of the lockout. Thus, the record supports a finding that the lock-out on May 31 did not taint the employee petition.

The NLRB therefore recognized and correctly applied the presumption of a continuing majority status. The Union's argument that the Board improperly applied the presumption because it shifted the burden to the Union fails to recognize that under the proper application, the burden does shift once the employer rebuts the presumption. Because Burger Pits presented sufficient evidence to rebut the presumed majority status in a context free of activities aimed at causing disaffection and the General Counsel failed to present evidence establishing that the employees' petition was tainted by Burger Pits' unfair labor practice, the NLRB properly found that Burger Pits had a good faith defense to charges of refusal to bargain.

B. The NLRB's finding that Burger Pits had a good faith reasonable doubt of the Union's continuing majority support is sustained by substantial evidence in the record.

■ Evidence presented to establish an employer's good faith doubt of continuing majority support must unequivocally indicate that a union's support has declined to a minority. *Mingtree Restaurant*, 736 F.2d at 1297. Evidence presenting only an ambiguous inference of a lack of majority support is not enough. *N.T. Enloe Memorial Hospital v. NLRB*, 682 F.2d 790, 795 (9th Cir.1982). A petition signed by half of the members of a bargaining unit and urging employers to withdraw recognition of the union, however, is sufficient evidence that the union has lost its majority support. *Sacramento Clinical Laboratory*, 623 F.2d at 114 (petition established loss of majority); *Industrial Waste Service, Inc.*, 268 NLRB 1180, 1186 (1984) (petition gave employer good faith doubt); *Master Slack Corp.*, 271 NLRB 78, 85 (1984) (petition established actual loss of majority).

■ Thus, the employee petition presented to Vice President Berger by employee Robbins constituted clear and convincing evidence on which the employer could base a reasonable good faith belief that the Union had in fact lost majority support. The petition stated that the signers "no longer wish to be represented by [the Union]". The petition alone is sufficient support for a finding that Burger Pits had a good faith doubt in the Union's continuing majority support.

The Union, however, alleges that the petition is not clear, cogent, and convincing evidence because Burger Pits offered no evidence (1) that the signatures were actually those of employees in the bargaining unit; (2) regarding the number of employees in the unit; and (3) concerning the circumstances surrounding the circulation of the petition.

The Union's allegations are without merit. Although the Union received the opportunity to challenge the petition's authenticity when it was put into evidence, the Union failed to raise the issue. Further, Berger testified that employee Robbins told him that he had personally collected the signatures on his own initiative and that the employees willingly signed the petition. Berger testified that 276 employees were in the bargaining unit and that testimony was unchallenged. No evidence was presented

to show that management was involved with, or even aware of, the petition prior to June 3 when Robbins presented it to Berger. Under these circumstances, the NLRB could find that the petition constituted clear and convincing evidence.

Even if an employee petition alone were not sufficient, the record discloses that Burger Pits' good faith doubt in the Union's majority support was based on other factors as well: (1) Robbins' statement that the petition was signed willingly at almost every location he visited; (2) reports that "most of the busboys and dishwashers would not join the Union" for "at least a year, or maybe two"; (3) no union business agent had visited ten of the Burger Pits' fifteen restaurants for a long period; (4) of sixteen employees at one location, only one was a Union member; and (5) of seventeen employees at another location, only two were Union members.

Thus, because an employee petition constitutes evidence sufficient to support a finding of good faith belief that a union has lost majority support and because other factors indicate the Union had lost majority support, the NLRB's finding that Burger Pits had a good faith reasonable doubt of the Union's continuing majority support is supported by substantial evidence in the record.

### IV. CONCLUSION

The NLRB correctly applied the burden of proof regarding the presumption of a union's continuing majority support. Burger Pits' good faith doubt of the Union's majority status is supported by substantial evidence in the record. Therefore, the order of the NLRB is AFFIRMED.